UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 4:19 CR 00367 ERW |
| v. | ) | |
| | ) | |
| JOHN RALLO, | ) | |
| | ) | |
| Defendant. | ) | |

### GOVERNMENT'S SENTENCING MEMORANDUM

Comes now the United States of America, by and through James Crowe, Jr., Attorney for the United States, and Hal Goldsmith, Assistant United States Attorney for the Eastern District of Missouri, and for its Sentencing Memorandum, states to this Honorable Court as follows:

1.  Title 18, United States Code, Section 3553(a) sets out the factors this Court should consider in fashioning an appropriate sentence. The first such factor to be considered is the nature of the offense, 18 U.S.C. 3553(a)(1). From the Indictment returned by the Grand Jury in this case, Defendant Rallo's Plea Agreement, the Presentence Investigation Report, and the Government's pleadings in the companion case, *United States of America v. Steven V. Stenger*, 4:19-CR-312-CDP, this Court is well versed in the facts and circumstances underlying Defendant Rallo's offense conduct. Therefore, the Government will not repeat here that which this Court is already fully aware of, but offers this simple and brief summary instead.

2.  Defendant Rallo and former St. Louis County Executive Steven Stenger were the two ends of a significant illegal *quid pro quo* pay to play scheme which originated during October, 2014, and continued through the end of 2017. The relationship between defendant

Rallo and Steven Stenger began during Stenger's first run for County Executive, when Rallo was introduced to Stenger at a local steakhouse. The relationship was corrupt from the beginning, when defendant Rallo complained to Stenger that he was tired of giving money to politicians and not getting anything in return. Stenger assured Rallo that, if elected County Executive, he would work to get Rallo's businesses County government contracts. That assurance from Stenger earned him $5,000 from Rallo that very evening as the first illegal payment Rallo would make to Stenger in what would become a lengthy pay to play scheme. Rallo kept paying Stenger throughout those several years, and he also recruited other political donors for Stenger and held several fundraisers for Stenger. There is no suggestion that Rallo thought Stenger was doing a good job as County Executive; the numerous payments made by Rallo and accepted by Stenger were all part of the pair's illegal pay to play scheme. And Stenger did not disappoint. Defendant Rallo participated in, and received the benefit of the illegal scheme relative to several of the illegal sub-schemes which involved his various companies, Cardinal Insurance, Cardinal Creative Consulting, and Wellston Holdings, LLC. Stenger attempted, unsuccessfully, to award two different County insurance contracts to Rallo's Cardinal Insurance Company. Through his company, Cardinal Creative Consulting, Rallo received a $130,000 sham consulting contract from the St. Louis County Port Authority, for which Rallo performed no work. Through his company, Wellston Holdings, LLC, Rallo received two different land contracts through the St. Louis County LCRA. Rallo intended to flip those properties and make millions of dollars in the transactions. All of these deals came about at Stenger's direction as a result of Rallo's continued illegal payments to him. As defendant Rallo aptly noted in a text message to Stenger on May 9, 2015, "It's good to have friends ;)."

3. There are real victims in this case. The more than one million residents of St. Louis County who had their trust in County government and its officials shattered by the illegal pay to play scheme. The legitimate and honest companies and their executives who submitted bids on various St. Louis County contracts, falsely believing that they were on a level playing field when, unbeknownst to them, "the fix was in." There is no question that the criminal conduct here was significant and far reaching, and its harm will be felt in St. Louis County for years to come.

4. In fashioning an appropriate sentence here, this Court needs to also have a full and clear understanding of the adverse impact defendant Rallo's and his co-schemers' criminal conduct has had on the activities and functions of St. Louis County Government, as well as the St. Louis Economic Development Partnership and its affiliated organizations, the St. Louis County Port Authority and the St. Louis County LCRA. Attached as Government Exhibits 1 - 3 to this Sentencing Memorandum are three (3) Victim Impact Statements submitted by the Boards of those organizations. The Government advises the Court that each of these letters has been authored and authorized by each of the individual Board members of their respective organizations. While these Victim Impact Statements were submitted in the companion case, *United States of America v. Steven V. Stenger*, and directly address the conduct of former County Executive Stenger, they are also applicable to the instant case against defendant John Rallo, and the victim organizations requested that they be submitted here relative to Rallo's sentencing.

5. As in all cases where a defendant has family and, particularly, children, the harmful impact of this defendant's criminal conduct will also be felt by them, consequences which should have been considered by defendant Rallo during the several years of his criminal schemes. As District Judge Sippel stated at the recent sentencing hearing in *United States v.*

*Mitchell Davis*, 4:17-CR-573 RWS, "No one stands where [defendant] stands at this moment without having a parent, a sibling, a spouse, or a child that will be affected by the conduct. That should have been a factor that each individual should have considered before they found themselves in these circumstances. In fact, the guidelines, when they were mandatory – and it's still written in Chapter 5, the Court is not to consider family circumstances in fashioning a sentence. That's not to say the Court's unsympathetic. It does have empathy for the situation each individual finds itself, but it doesn't make a specific defendant unique in that regard." In the instant case, this Court is not ultimately responsible for separating defendant Rallo from his family, as it was defendant Rallo's own criminal conduct which caused and created this situation. While the letters submitted by defendant Rallo's wife and family members are, of course, sympathetic and supportive of the defendant, it is the government's position that defendant's family situation is not a valid basis under the facts and circumstances presented here for leniency from this Court.

6. The need to deter others from engaging in similar criminal conduct is also an appropriate consideration for this Court here. Instances of pay to play in St. Louis County during the tenure of former County Executive Steven Stenger were widespread. Companies and their executives need to understand that there are serious consequences to such illegal conduct, including incarceration. A sentence of imprisonment in this case will act to deter this Defendant and others similarly situated from engaging in such illegal conduct.

7. The need to avoid disparate sentences is also a factor this Court should consider here. There were several related defendants connected to the pay to play scheme. Steven Stenger, as the elected County Executive, was the most culpable relative to the illegal pay to play scheme, and Judge Perry sentenced him to 46 months' in prison, the upper end of his

4

sentencing guideline range, without a departure or variance.  Defendant Sweeney, who was charged with Misprision of a Felony relative to Stenger and this Defendant Rallo's pay to play scheme, received a slight downward departure to probation from Judge Perry, who was fully aware of Sweeney's role relative to the Government's investigation.  A third related defendant with significantly less involvement in the pay to play scheme, William Miller, the former St. Louis County Chief of Staff, was sentenced by Judge Sippel to 15 months in prison, the low end of his sentencing guideline range, without a downward departure or variance.  Because of this defendant's significant role in the pay to play scheme, he is appropriately considered the second most culpable.  Defendant was not, however, a public official as the other three related defendants were, and that is a fact which this Court may consider.

8. The United States will defer to this Court in fashioning an appropriately fair and just sentence in this case based upon the facts and circumstances presented here, as well as the information provided to the Court by the United States in the instant Sentencing Memorandum and in its previously filed pleading (doc. 32).

WHEREFORE, the United States of America prays that this Honorable Court consider its Sentencing Memorandum, and for such other relief as this Court deems appropriate and just under the circumstances.

Respectfully submitted,

JAMES CROWE, JR.
Attorney for the United States


 */s/ Hal Goldsmith*
HAL GOLDSMITH #32984
Assistant United States Attorney
111 S. 10th Street, Room 20.331
St. Louis, Missouri 63102
(314) 539-2200

5

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 8, 2019, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the defendant's counsel of record.

                                            */s/ Hal Goldsmith*
                                            HAL GOLDSMITH
                                            Assistant United States Attorney