EXHIBIT A

May 21, 2020

J.S. Walton
Warden
4500 Prison Rd.
Marion, IL 62959

    Re:    <u>USA v. John Rallo</u>

Dear Warden Walton:

    I, John Rallo, respectfully ask you to consider home confinement for my sentence. Under the Coronavirus Aid, Relief, and Economic Safety Act (CARES Act), the Bureau of Prisons was granted the authority to expand the eligibility for home confinement, particularly for the medically vulnerable population, during the global pandemic brought on by COVID-19. I am currently ordered to surrender to your facility on June 22, 2020 no later than 1:00 p.m. to serve a sentence of 17 months.

    I have, unfortunately, had a recent cancer diagnosis. My thyroid was surgically removed along with nine adjoining lymph nodes. The thyroid gland controls the human metabolic and immune systems. The absence of my Thyroid Gland requires a balance of daily prescription synthetic hormones and medications to keep my up body's metabolic activity. These hormones help my body maintain a metabolism, but do not aid in immunity strength. While I continue to recover from cancer that is not deemed in remission, it does make my health a liability as an at-risk individual during this pandemic. Moving my confinement to my home will allow me to protect the other Marion inmates, the administration and staff, and myself while sheltering in place.

    The CDC and other medical authorities have clarified that COVID-19 is especially dangerous for both older people and people with severe chronic medical conditions. Eight out ten deaths reported in the United States have been in older adults. Those with certain serious health concerns—including chronic lung disease, moderate to severe asthma, compromised immune systems, severe obesity, diabetes, renal failure, and liver disease—are also especially vulnerable to and at higher risk for serious complications from COVID-19, including death.

    I am 54 years old and recovering from surgery related to my Thyroid cancer. I continue to undergo treatment and follow-ups with my medical team. I am prescribed several medications

to try to account for loss of this vital gland that helps contribute to the immune system. The first year after surgery is the most important. My doctors may consider at least one radioactive iodine treatment along with other early detection (screening) tests for other types of cancer. If my cancer does come back at some point, my treatment options will depend on the where the cancer is and what treatments I've had before. Treatment options might include additional surgery, radiation therapy, chemotherapy, targeted therapy or some combination of these.

As such, I am among those with the highest risk of death or serious illness from COVID-19. Yet, as an incarcerated person, it is impossible for me to follow the CDC's recommendations to protect myself and others from exposure to this highly-transmissible disease. This risk of serious illness or death from the unprecedented global pandemic, together with all of the other relevant factors in this case, presents an extraordinary and compelling basis for your consideration under the CARES Act.

In the alternative, if you do not accept my request under the CARES Act, please accept this as my formal request that you make a motion with the court in my case pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and the First Step Act. Under all of the circumstances in this case, the Court should conclude that my serving the sentence in home confinement is sufficient to satisfy the purposes of sentencing. Under *Pepper v. United States*, 562 U.S. 476, 490-93 (2011), the Court can, and indeed must, consider post-offense developments under § 3553(a).

I'd ask you, as part of your consideration to examine the Court response to COVID-19 that reflects the extreme exigency of the present circumstances, especially for those individuals most vulnerable to harm from the virus. In *United States v. Garlock*, for example, the district court extended the defendant's date for surrendering to serve an already-imposed prison sentence until September 1, 2020, concluding that no one should be entering BOP custody absent "truly extraordinary circumstances":

> By now it almost goes without saying that we should not be adding to the prison population during the COVID-19 pandemic if it can be avoided. Several recent court rulings have explained the health risks—to inmates, guards, and the community at large—created by large prison populations. . . . The chaos has already begun inside federal prisons—inmates and prison employees are starting to test positive for the virus, quarantines are being instituted, visits from outsiders have been suspended, and inmate movement is being restricted even more than usual. . . . To avoid adding to the chaos and creating unnecessary health risks, offenders who are on release and scheduled to surrender to the Bureau of Prisons in the coming months should, absent truly extraordinary circumstances, have their surrender dates extended until this public health crisis has passed.

*United States v. Garlock*, No. 18-CR-00418-VC-1, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020).

In *United States v. Copeland*, the Court granted a sentence reduction to time served under another portion of the First Step Act to a defendant serving a life sentence for a drug trafficking conspiracy and firearm possession. *United States v. Copeland*, No. 2:05-cr-00135-DCN (D.S.C. Mar. 24, 2020) (ECF No. 662). The court recognized that the defendant's "tenuous health condition" put him at "even higher risk for severe illness and possible death" from the COVID-19 pandemic. *Id.* at 7. The court considered letters from members of Congress as evidence of its "desire for courts to 'use all available powers and authorities . . . to reduce the number of federal prisoners in . . . prisons,'" especially for elderly and sick individuals and those within the last 36 months of their sentences who are appropriate for placement in home confinement. *Id.* (quoting Letter of House Judiciary Committee, Mar. 19, 2020).

A sampling of the court orders granting release based on the pandemic fails to convey the full volume of building precedent. *See, e.g.*, *United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *1 (E.D. Mich. Mar. 27, 2020) ("[T]he danger posed to Defendant in the Saginaw County Jail by the COVID-19 pandemic constitutes an independent compelling reason to temporarily release him from custody."); *United States v. Michaels*, No. SACR 16-76-JVS, 2020 WL 1482553, at *1 (C.D. Cal. Mar. 26, 2020) ("Michaels has demonstrated that the Covid-19 virus and its effects in California constitute 'another compelling reason'" justifying temporary release under § 3142(i)); *United States v. Jaffee*, No. 19-cr-00088-RDM (D.D.C. Mar. 26, 2020) (releasing defendant with criminal history in gun & drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources"); *United States v. Harris*, No. CR 19-356, 2020 WL 1482342, at *1 (D.D.C. Mar. 26, 2020) ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement on . . . strict conditions."); *United States v. Perez*, No. 19 CR. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous complications should [h]e contract COVID-19"); *United States v. Stephens*, No. 15-cr-95 (AJN), 2020 WL 1295155, __ F. Supp. 3d __, at *2 (S.D.N.Y. Mar. 19, 2020) (releasing defendant, given "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic").

In fact, the Eighth Amendment's prohibition on cruel and unusual punishment includes unreasonable exposure to dangerous conditions in custody. *Helling v. McKinney*, 509 U.S. 25, 28

(1993); *see also Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (applying *Helling* to exposure to asbestos); *Brown v. Mitchell*, 327 F. Supp. 2d 615, 650 (E.D. Va. July 28, 2004) (applying *Helling* to contagious diseases caused by overcrowding conditions). The § 3553(a) factors can be met in this case by an order of home confinement as a condition of supervised release.

The totality of the circumstances demonstrate that converting my sentence to time home confinement before I am exposed to COVID-19 in custody, is "sufficient, but not greater than necessary," to serve the purposes of sentencing under § 3553(a).

I would remain in his family home as a release plan, a location that has been previously approved by pre-trial and is open for inspection to the authorities.

If you have any questions or concerns, please do not hesitate to contact me.

Very truly yours,

JOHN RALLO

Enclosure