UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19-CR-00367 ERW |
| | ) | |
| JOHN RALLO, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)(i)**

The United States of America, through Assistant United States Attorney Hal Goldsmith, opposes Defendant's Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. # 73). Defendant fails to identify any "extraordinary and compelling reasons" that qualify for a reduced sentence under the statute, much less satisfy the separate requirement of showing that he is no longer a danger to community. Further, the mandatory sentencing factors in 18 U.S.C. § 3553(a) cut against Defendant's early release. Thus, Defendant's motion should be denied.

**BACKGROUND**

On July 16, 2019, Defendant pled guilty to a three-count indictment of Mail Fraud/Honest Services Fraud in violation of 18 U.S.C. §§ 1341 and 1346. Defendant's conviction was based on his payment of illegal bribes to former St. Louis County Executive Steven Stenger ("Stenger") in exchange for favorable official action for himself and his companies, Cardinal Creative Insurance Group and Cardinal Creative Consulting. Beginning in 2014, Defendant paid or caused to be paid to Stenger illegal bribes disguised as political donations in exchange for favorable official action related to potential insurance contracts, sweetheart real estate deals, as well as a sham consulting contract. On March 5, 2020, after several defense-requested continuances due to Defendant's

health issues, this Court sentenced Defendant to 17 months' imprisonment and two years of supervised release. At the time of his sentencing, Defendant asserted that he was healthy and that his recent surgery and medical treatment had been fully successful. Defendant is presently serving his sentence at USP Marion in Illinois, with a projected release date of September 5, 2021.

On May 21, 2020, approximately one month before his formal surrender date, Defendant sought eligibility for home confinement or, alternatively, administrative release from the Bureau of Prisons ("BOP") through a written request to the Warden, USP Marion. (Doc. # 73-1). Defendant states that the Warden did not rule on that request. (Doc. # 73, page 2). This matter is now before the Court on Defendant's motion for compassionate release, wherein Defendant argues that he is entitled to release to home confinement under 18 U.S.C. § 3582(c)(1)(A)(i) because his age and health condition make him particularly susceptible to COVID-19.

**ARGUMENT**

As District Court Judge Fleissig recently found in denying a request for early release based on COVID-19: "The law is clear: absent statutory authority, the Court cannot reduce a final sentence." *United States v. Adem*, No. 4:19-cr-00676-AGF, slip op. at 1 (Mar. 19, 2020) (ECF No. 242) (rejecting an unopposed request for early release of just six days in light of the coronavirus pandemic); *see also Dillon v. United States*, 560 U.S. 817, 825 (2010) ("'A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment' and may not be modified by a district court except in limited circumstances." (quoting 28 U.S.C. § 3582(b)). Here, Defendant seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act.

"In December 2018, as part of the First Step Act, Congress worked a change to the rule of long standing that a court could only modify a sentence upon motion from the Bureau of Prisons." *United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19,

2020) (quotation and brackets omitted). To allow prisoners to petition courts directly for compassionate release while still giving BOP the first opportunity to evaluate such requests, Congress amended section 3582(c) to include the following language:

> (c) The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons***, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier***, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c) (emphasis added). Thus, a defendant may now move the sentencing court for a reduced sentence but only "after (1) fully exhausting his administrative remedies, or (2) a lapse of 30 days from the warden's receipt of the defendant's request." *United States v. Miller*, No. 2:16-CR-00269-BLW, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020).

While the First Step Act changed *who* could file a motion for compassionate release, it did not alter the requirements for granting relief. *United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) ("Congress in fact only expanded access to the courts; it did not change the standard."). Under the unmodified language in section 3582(c)(1)(A)(i), a sentencing court may reduce a term of imprisonment only for "extraordinary and compelling reasons." This phrase, in turn, is defined by the Sentence Commission's binding policy statement in section 1B1.13 of the Guidelines Manual. *See United States v. Korn*, No. 11-CR-384S, 2020 WL 1808213, at *3 (W.D.N.Y. Apr. 9, 2020) ("Congress delegated to the

Sentencing Commission the task of [defining this phrase].”). Significantly, section 1B1.13 “limits the universe of extraordinary and compelling reasons to five categories”: (A)(i) terminal illness, (A)(ii) debilitating medical conditions, (B) advanced age, (C) death or incapacitation of certain family members, and (D) other extraordinary and compelling reasons determined by BOP. *United States v. Lynn*, No. CR 89-0072-WS, 2019 WL 3805349, at *2 (S.D. Ala. Aug. 13, 2019) (citing U.S.S.G. § 1B1.13 cmt. n.1). Additionally, before granting early release, the court must verify that the “defendant is not a danger to the safety of any other person or to the community” and consider whether a lesser sentence is appropriate under the section 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(2).

Applying this framework to the present case, the Court must deny Defendant’s request, because he does not qualify for a reduced sentence under the First Step Act.

**I. Defendant does not qualify for early release under section 3582(c)(1).**

Defendant has not met the high bar of showing that he is entitled to an early release under section 3582(c)(1)(A). *See White v. United States*, 378 F. Supp. 3d 784, 785 (W.D. Mo. 2019) (“It is the Petitioner’s burden to prove a sentencing reduction is warranted [on a motion for compassionate release].”) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016)). First, while COVID-19 has impacted the lives of all Americans, Defendant has not identified an “extraordinary and compelling” reason that “warrant[s]” a reduction in sentence under section 1B1.13. Second, and equally problematic, Defendant still poses a danger to the community, and the factors in 18 U.S.C. § 3553(a) weigh strongly against early release. As such, Defendant’s motion for compassionate release must be denied.

***a. Defendant has not identified any "extraordinary and compelling reasons" that qualify under the Sentencing Commission's binding definition in section 1B1.13.***

First, Defendant fails to identify any circumstances that can justify release. To qualify for early release, a defendant must demonstrate that at least one of the "extraordinary and compelling reasons" identified in section 1B1.13 of the Sentencing Guidelines warrants a reduced sentence in his or her particular case. *See, e.g.*, *United States v. Lynn*, No. CR 89-0072-WS, 2019 WL 3082202, at *1 (S.D. Ala. July 15, 2019) ("The Commission's policy statement thus establishes the boundaries of what may and may not be judicially determined to be extraordinary and compelling reasons for a sentence reduction."). "[B]ecause [Defendant's] grounds for relief do not accord with any of these categories, he cannot successfully obtain a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)." *Brummett*, 2020 WL 1492763, at *3.

Application Note 1 of section 1B1.13 provides a defined universe of extraordinary and compelling reasons that qualify a defendant to be considered for early release. First, this standard is met if a defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, certain debilitating medical conditions qualify, provided that the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1(A)(ii). However, as the District Court observed just last year, "a compassionate release due to a medical condition is an extraordinary and rare event." *White*, 378 F. Supp. 3d at

787. Section 1B1.13 also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)–(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." *Id.* at cmt. n.1(D).[1]

Defendant does not meet the guideline definition for "extraordinary and compelling reasons" under Section 1B1.13(A)(i) because his condition of papillary thyroid cancer is not terminal. Defendant had his thyroid (and as a result, the cancerous thyroid nodules) removed in 2019 prior to his sentencing hearing. Additionally, papillary thyroid cancer is extremely treatable and has a high survival rate. Defendant also does not meet the guideline definition under Section 1B1.13 (A)(ii) because his current thyroid issues are being properly treated within the correctional facility and do not prevent Defendant from providing self-care. Further, Defendant does not fit the criteria under Section 1B1.13(B) because he is not 65 years old (or older).

Specifically, Defendant claims that his papillary thyroid cancer, coupled with the spread of the coronavirus, justifies his immediate release from imprisonment. In other words, Defendant advances the *possibility* that he will become infected with COVID-19 as grounds for erasing the remainder of his sentence. Although Defendant has established that he has a history of papillary thyroid cancer, this speculative concern about contracting COVID-19 cannot justify compassionate release. Under section 1B1.13, a defendant must establish he is suffering from either a "terminal" illness or a "serious physical or mental condition . . . that substantially diminishes the ability . . . to provide self-care . . . and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1. While not minimizing Defendant's condition, it simply

---

[1] Shortly after the enactment of the First Step Act, BOP published a revised Program Statement 5050.50, which "provides guidance regarding subsection (D) and what qualifies as 'other reasons' that are 'extraordinary and compelling.'" *United States v. Gutierrez*, No. CR 05-0217 RB, 2019 WL 2422601, at *3 (D.N.M. June 10, 2019); *see also* FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50 (Jan. 17, 2019), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

does not qualify under this standard. *Clark*, 2020 WL 1557397, at *4 ("Defendant cites no authority for the proposition that the *fear* of contracting a communicable disease warrants a sentence modification."); *Lynn*, 2019 WL 3082202, at *1–2 (denying compassionate release despite "a welter of health issues" identified by defendant because he failed to show that they would "substantially diminish his ability to care for himself in a prison setting").

Moreover, even assuming Defendant had shown "a particularized susceptibility to the disease," courts have required defendants to demonstrate "a particularized risk of contracting the disease at his prison facility." *See United States v. Henley, Jr.*, No. 4:18-CR-01027-RLW, slip op. at 5 (E.D. Mo. June 17, 2020) (citing *United States v. Feiling*, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020)). Defendant fails to show that his continued incarceration at USP Marion warrants a reduction in sentence. In this regard, it is important to highlight the efforts that BOP has undertaken to mitigate coronavirus-related risks at its facilities. Effective March 13, BOP implemented Phase Two of its COVID-19 Action Plan, which required all facilities to "to mitigate the spread of the COVID-19" with proactive measures that included: (1) prohibiting all social and volunteer visits; (2) restricting legal visits (with case-by-case exceptions); (3) suspending inmate facility transfers (with allowances for medical treatment); (4) requiring staff health screening; (5) adopting a variety of coronavirus-specific protocols for inmates, such as screening new inmates and isolating and testing inmates with risk factors; and (6) modifying operations to maximize social distancing and to limit group gatherings. *Id.* Since then, BOP has continued to refine its efforts with regular updates. *See* Fed. Bureau of Prisons, *COVID-19 Action Plan: Phase Five*, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (Mar. 31, 2020). For example, Phases Four through Six include new measures, like quarantining all incoming inmates for at least fourteen days and securing inmates in their quarters to decrease the potential for transmission. *Id.*; Fed. Bureau of Prisons, *COVID-19 Action Plan: Phase Six*,

https://www.bop.gov/resources/news/pdfs/20200414_press_release_action_plan_6.pdf (Apr. 14, 2020). As a result of these proactive steps, BOP has kept the vast majority of federal inmates virus-free and generally has limited transmission to a fraction of inmates where positive cases have occurred.

By failing to even discuss the safeguards in place at USP Marion, Defendant has "not shown that the [BOP] plan . . . is inadequate to manage the pandemic [at USP Marion], or that the facility is specifically unable to adequately treat [him]." *See Gileno*, 2020 WL 1307108, at *4. It is true, as Defendant notes, that 13 inmates at USP Marion have tested positive for COVID-19. *See* Fed. Bureau of Prisons, *Covid-19 Cases*, https://www.bop.gov/coronavirus/index.jsp (last visited July 20, 2020). But courts consistently have found that "[t]he mere presence of the virus . . . does not automatically translate to the release of [a defendant]." *See United States v. Veras*, No. 3:19-CR-010, 2020 WL 1675975, at *5 (M.D. Pa. Apr. 6, 2020) (collecting cases). For example, in denying a compassionate-release motion from a facility with a significant coronavirus outbreak, the *Korn* Court explained that "the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that [BOP] will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme." 2020 WL 1808213, at *6; *see also United States v. Seymon*, No: 11-cr-10040-JES, 2020 WL 2468762, at *1, *4 (C.D. Ill. May 13, 2020) (finding no "extraordinary and compelling reason" to release a defendant with diabetes, high cholesterol, and a history of smoking from a facility with nearly 250 inmates testing positive for COVID-19); *Roberts*, 2020 WL 1700032, at *1 (denying release for HIV-positive inmate at a facility with confirmed cases of COVID-19). Other courts have questioned whether defendants are "actually at any greater risk of contracting the virus inside [a facility] than outside," even at prisons where there have been confirmed cases, because "BOP is able to impose restrictions" on inmates in compliance with CDC guidelines, which there is no guarantee the inmates would follow "outside

prison walls." *See United States v. Wright*, No. 17-CR-695 (CM), 2020 WL 1922371, at *3 (S.D.N.Y. Apr. 20, 2020).

Here, there is no evidence indicating that USP Marion has failed to "provide[] requested medical attention to Defendant" for his condition or will be unable to care for Defendant were he to contract COVID-19. *See Seymon*, 2020 WL 2468762, at *4. In fact, USP Marion Clinical Director Randall Pass, M.D., has stated that based on Defendant's medical records and lab work there is no reason that BOP would be unable to provide all necessary care for him. (See Exhibit A attached hereto). Thus, Defendant has failed to meet his burden of showing that facility-specific considerations qualify as an "extraordinary or compelling reason" that would make release appropriate here. *See Gileno*, 2020 WL 1307108, at *4 (noting that, without particularized evidence of inadequate care, "the Court cannot assume that [BOP] will be unable to manage the outbreak or adequately treat [the defendant]").

In sum, while Defendant's concerns about COVID-19 are understandable, they simply do not qualify him for early release under section 1B1.13 of the Sentencing Guidelines.

***b. Defendant still poses a significant danger to the community, and the 3553(a) factors weigh strongly against release.***

Alternatively, the request for a sentence reduction should be denied because Defendant has failed to demonstrate that he no longer poses a danger to the community or that he otherwise merits release under the § 3553(a) factors. "In determining whether to grant a motion to modify a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a)." *Gileno*, 2020 WL 1307108, at *1; *see also* 18 U.S.C. § 3582(c)(1)(A) (directing courts to consider these factors for every request for early release). Additionally, "a reduction in sentence under [the First Step Act] requires a determination that '[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).'" *Eberhart*, 2020 WL 1450745, at *2

(quoting U.S.S.G. § 1B1.13(2)). A defendant's failure to show that *both* section 3142(g) *and* section 3553(a) favor a reduced sentence is fatal to such a request. *See United States v. Brummett*, No. 6:07-103-DCR, 2020 WL 1492763, at *3–4 (E.D. Ky. Mar. 27, 2020) (concluding that the danger defendant posed to the community and the section 3553(a) factors each provided an independent basis for denying a request for compassionate release). Here, Defendant's motion fails to show that he no longer poses a danger to the community and that the factors in section 3553(a) favor a reduced sentence.

In determining whether a reduced sentence is appropriate in this case, several factors warrant special consideration: (1) the nature and circumstances of the offense charged and (2) the history and characteristics of the person. Additionally, it is important to address the need for Defendant's sentence to promote respect for the law, provide just punishment, and afford adequate deterrence to any future criminal activity.

Courts have consistently held that when a defendant poses a significant threat to the community's economic safety, release may be properly denied. *See United States v. Jinwright*, No. 3:09-CR-00067-W, 2010 WL 2926084 (W.D.N.C. July 23, 2010). In *United States v. Reynolds*, the Ninth Circuit denied a defendant's motion for bail pending appeal because he had failed to show by clear and convincing evidence that he did not constitute an economic danger to the community. 956 F.2d 192 (9th Cir.1992). There, the court held that "danger may, at least in some cases, encompass pecuniary or economic harm." *Id.* at 192–93 (citing *United States v. Provenzano*, 605 F.2d 85, 95 (3rd Cir.1979) (danger is not limited to physical harm)); *see also United States v. Moss*, 522 F. Supp. 1033, 1035 (E.D. Pa. 1981) ("It is generally agreed, of course, that a[c]ourt may refuse bail on the ground that a defendant poses a threat to the community even though the threat is pecuniary rather than physical."), *aff'd* 688 F.2d 826 (3rd Cir.1982); *United States v. Miranda*, 442 F. Supp. 786, 792 (S.D. Fla. 1977) ("First, it is beyond dispute that the criterion of

'danger to the community,' which is an explicit component of the Bail Reform Act, is not limited to the potential for doing physical harm.") (citing *United States v. Louie*, 289 F. Supp. 850 (C.D. Cal. 1968)). Nothing about the COVID-19 pandemic reduces Defendant's economic danger to others. In fact, the community itself is even more vulnerable to Defendant in light of the state of emergency. As relevant here, in the midst of this pandemic people are likely more susceptible to fraud because there is heightened fear and uncertainty. Additionally, a number of courts have denied similar requests out of concern that releasing defendants will increase COVID-19 risks for others because they are unlikely to follow shelter-in-place orders and other guidance from state and local authorities. *See United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *7 (D. Kan. Mar. 25, 2020) (denying release, in part, because "supervising such a high-risk offender out in the community will place . . . officers at heightened risk of contracting the virus"). The same concerns apply equally to Defendant's request.

The factors to be considered under Section 3553(a) undercut Defendant's present claim for release. In terms of the undisputed facts of the offense charged as set forth in Defendant's plea agreement, beginning in October of 2014 Defendant paid significant illegal bribes to Stenger which he believed would result in receiving special treatment and influence in awarding St. Louis County and Port Authority contracts. Although Defendant was never awarded the insurance contracts he originally demanded, Stenger caused a sham Port Authority contract that paid out $130,000 to be issued to Defendant. Defendant accepted the $130,000, despite never doing any actual work under the contract and falsifying his required monthly reports. Stenger also directed two separate sweetheart real estate deals to Defendant, which provided Defendant with significant financial opportunities. The evidence in the case was overwhelming, and revealed systemic honest services fraud by Stenger, aided and abetted by Defendant. In this *quid pro quo* pay to play bribery

scheme, Defendant provided the *quid*, in exchange for Stenger providing the *quo*. Defendant's offense conduct was substantial.

The sentencing factors in section 3553(a) also cut strongly against early release. Section 3553(a)(2) directs the Court to consider the need for Defendant's sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. If Defendant were to be granted immediate release, his sentence would not reflect these objectives. As of this date, Defendant has served *only 29 days* of his 17-month sentence. It is the position of the United States that serving a 29-day sentence for substantial criminal conduct occurring over the span of four years would not adequately promote respect for the law and provide just punishment. Additionally, Section 3553(a)(2) emphasizes the importance for a sentence to afford adequate deterrence to future criminal conduct, which a modified sentence at this time would not accomplish.

Defendant's history and characteristics in connection with his thyroid cancer are also equally unpersuasive. As Defendant's medical records note, Defendant had his thyroid gland removed last fall and since then has had multiple follow up visits with his doctor. Most tellingly, at his most recent doctor's visit in February of 2020, Defendant was reported as doing well. Defendant's visit summary did not note any further medical issues or concerns. (Doc. # 73-2).

In sum, the above considerations militate against a sentence reduction or modification and outweigh Defendant's concerns related to COVID-19. Defendant's motion presents no new evidence or information that meaningfully shifts the balance of the 3142(g) or 3553(a) factors in Defendant's favor. *See Eberhart*, 2020 WL 1450745, at *2 (denying request for release because the "defendant fail[ed] to demonstrate that the § 3142(g) factors considered at the time detention was ordered, or the § 3553(a) factors considered by the court at the time of sentencing . . . have materially changed"). Accordingly, because Defendant has not met his burden of demonstrating that these considerations support release, his request for release must be denied on this basis.

**II. The Court lacks jurisdiction to resentence the Defendant to home confinement, as BOP has "plenary control" over designation of inmates.**

Defendant requests that the Court resentence him to home confinement as part of his request for compassionate release. (Doc. # 73) (arguing that Defendant is entitled to compassionate release to home confinement under 18 U.S.C. § 3582(c)(1)(A)(i) because his age and thyroid cancer make him more susceptible to COVID-19). The Court must deny this request because it "has no authority to designate the place of confinement." *Eberhart*, 2020 WL 1450745, at *3. Instead, well-settled precedent recognizes that the BOP has complete authority to determine where an inmate is confined.

"While a [district court] judge has wide discretion in determining the length and type of sentence, the court has no jurisdiction to select the place where the sentence will be served. Authority to determine place of confinement resides in the executive branch of government and is delegated to the Bureau of Prisons." *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (per curiam) (citation omitted). Indeed, as the Supreme Court has made clear, "the BOP has *plenary control* . . . over 'the place of the prisoner's imprisonment.'" after the court imposes its sentence. *Tapia v. United States*, 564 U.S. 319, 331 (2011) (citing 18 U.S.C. §§ 3621, 3624) (emphasis added). Furthermore, a number of courts have concluded that the COVID-19 pandemic does nothing to unsettle this long-standing rule. *See, e.g.*, *United States v. Oliver*, No. CR JKB-16-0485, 2020 WL 1505899, at *1 (D. Md. Mar. 30, 2020) ("[I]t is inherently the authority of the Bureau of Prisons to transfer an inmate to home confinement pursuant to 18 U.S.C. § 3624(c)."); *United States v. Williams*, No. CR JKB-15-0646, 2020 WL 1506222, at *1 (D. Md. Mar. 30, 2020) (same); *Garza*, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020) ("[T]he Court lacks authority to designate home confinement."). Thus, regardless of the Court's determination on compassionate

release, the authority to determine Defendant's placement for the remainder of his sentence rests solely with the BOP. Any suggestion to the contrary must be rejected out of hand.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court deny Defendant's motion, consistent with the overwhelming majority of courts that have considered requests for compassionate release in light of COVID-19 pandemic.[2] *See Adem*, slip op. at 1; *Aguila*, 2020 WL 1812159, *2; *Albertson*, 2020 WL 1815853, at *1–2; *Brown*, 2020 WL 1479129, at *1; *Carver*, 2020 WL 1604968, at *1; *Clark*, 2020 WL 1557397, *1, 3; *Eberhart*, 2020 WL 1450745, at *2; *Garza*, 2020 WL 1485782, at *1–2; *Gileno*, 2020 WL 1307108, at *4; *Hernandez*, 2020 WL 1445851, at *1; *Johnson*, 2020 WL 1663360, at *2–6; *Korn*, 2020 WL 1808213, at *8; *Ogarro*, 2020 WL 1876300, at *6; *Raia*, 954 F.3d at 597; *Reeves*, 2020 WL 1816496, at *1; *Roberts*, 2020 WL 1700032, at *2; *Seymon*, 2020 WL 2468762, at *4; *Weber*, slip op. at 4; *Wright*, 2020 WL 1922371, at *3; *Zywotko*, 2020 WL 1492900, at *1.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

*/s/ Hal Goldsmith*
Hal Goldsmith MO 32984
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

[2] The Court should not grant a sentence modification absent a release plan that includes specific conditions for avoiding COVID-19. Additionally, the Government requests that any order granting release accommodate the need to quarantine a defendant for a period of at least fourteen days to protect public health. Specifically, the Court should retain jurisdiction over the motion for fourteen days if it makes a determination to grant release, while advising the parties of that decision. BOP will then place the inmate in quarantine. If the defendant has not displayed symptoms or tested positive for COVID-19 during that period, the Court may then order release. If the defendant does tests positive during the initial fourteen-day period, the Government will notify the Court and seek an extension of the release date until the defendant has tested negative.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Hal Goldsmith*
Hal Goldsmith MO 32984
Assistant United States Attorney